**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-01903-CMA

TAMMY L. SCHMER,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER REVERSING DISABILITY DECISION AND
REMANDING TO COMMISSIONER**

---

This matter is before the Court on review of the Commissioner's decision that denied Plaintiff Tammy L. Schmer's applications for disability insurance benefits pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33. Jurisdiction is proper under 42 U.S.C. § 405(g).

## I. BACKGROUND

Plaintiff was born on January 5, 1963. She was 43 years old on her alleged disability date of August 31, 2006. (AR at 131.) She completed one year of college. (AR at 177.) She had previously worked as a bank teller, accounting clerk, administrative secretary, and clerk typist. (AR at 74, 191.) Plaintiff alleged disability due to multiple physical and mental impairments, including degenerative disc disease, fibromyalgia, sleep apnea, post-concussion syndrome with cognitive deficits, and depressive disorder.

After her claims were initially denied, a hearing was held before Administrative Law Judge ("ALJ") Raul C. Pardo on February 23, 2009.  (AR at 40-78.)  At the hearing, Plaintiff testified about her various conditions and the effect they had on her functional capacity.  (AR at 40-73.)   Sandra Trudeau, a vocational expert ("VE") also testified at the hearing.  (AR at 74-76.)  The ALJ asked the VE to assume an individual with Plaintiff's age, education, and work experience with a residual functional capacity ("RFC") equal to the one ultimately assessed by the ALJ in his decision.  The VE opined that such an individual would be unable to perform Plaintiff's past relevant work; however, the VE also testified that such an individual could work as an order clerk or as a final assembler.  (AR at 75-76.)

On April 14, 2009, the ALJ issued an unfavorable decision, finding that Plaintiff had not been under a disability, as defined by the Act, from the alleged onset date through the date of the decision.  This appeal followed.  The Court heard oral argument on July 1, 2011 and took the matter under advisement.  For the following reasons, the Court reverses the Commissioner's denial of benefits and remands the case to the Commissioner for proceedings consistent with this Order.

## II.  <u>STANDARD OF REVIEW</u>

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than

a preponderance." *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

"Evidence is not substantial if it is overwhelmed by other evidence in the record."

*Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In so reviewing, the

Court may neither reweigh the evidence nor substitute its judgment for that of the

agency.  *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

## III. <u>ANALYSIS</u>

This appeal primarily concerns the ALJ's analysis at step two and step four of the

Commissioner's five-step sequential evaluation process for determining whether a

claimant is disabled.  Step two requires the ALJ to determine whether the claimant's

medically determinable impairments are severe.  20 C.F.R. § 404.1520(a)(4)(ii).  The

ALJ found that Plaintiff had the following severe impairments: disorders of the spine

(slight herniation L5-S1 and C6-7 with no radiculopathy), fibromyalgia with chronic pain,

sleep apnea, and obesity.  (AR at 19.)

Step four requires an ALJ to assess a claimant's residual functional capacity

("RFC").  At step four, the ALJ made the following RFC assessment:

> the claimant has the [RFC] to perform sedentary work[1] . . . except that
> she can lift and carry 10 pounds occasionally and less than 5 pounds
> frequently; sit for 6 hours out of an 8-hour workday and stand and walk 6
> hours out of an 8-hour workday with occasional and frequent sitting and
> standing to relieve pain (sit/stand option); can occasionally climb, balance
> and bend but never climb ladders, scaffolds or ropes; would have to avoid

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and small tools.
Although a sedentary job is defined as one which involves sitting, a certain amount of
walking and standing is often necessary in carrying out job duties. Jobs are sedentary if
walking and standing are required occasionally and other sedentary criteria are met."
20 C.F.R. § 404.1567(a).

moderate exposure to extreme cold; and is not able to walk on rough or uneven surfaces.

(AR at 20-21.)  Given this RFC, the ALJ determined that Plaintiff could not perform any of her past relevant work, but could perform other work that existed in the local and national economies, such as an order clerk or final assembler.  (AR at 30-31.)

In this appeal, Plaintiff contends that:(1) the ALJ erred in excluding Plaintiff's mental and cognitive impairments at step two; (2) the ALJ improperly weighed the opinion evidence; (3) and the ALJ failed to properly evaluate Plaintiff's credibility.

## A.   WHETHER THE ALJ ERRED AT STEP TWO

Plaintiff argues that the ALJ erred by not including Plaintiff's depressive disorder and post-concussion syndrome as severe impairments at step two.  Plaintiff contends that this is reversible error because it might have impacted the RFC determination. (Doc. # 13 at 9) ("the RFC evaluation contains no discussion of mental or cognitive limitations.").  However, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."  *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (finding harmless error "when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). As mentioned, the ALJ found Plaintiff had several severe impairments.  Thus, Plaintiff's arguments regarding step two errors are more properly addressed at step four.  *See Dray*, 353 F. App'x at 149 (addressing the plaintiff's step two arguments as they

pertained to the ALJ's RFC finding).  The issue is whether the ALJ's decision not to include limitations for these impairments in his RFC assessment was supported by substantial evidence.

The Court begins its analysis with the observation that the ALJ was under no obligation to include limitations in the RFC assessment for a particular impairment. *See Irving v. Astrue*, No. 10-cv-01657, 2011 WL 2173780, at *5 (D. Colo. June 1, 2011) (citing *Boucher v. Astrue*, 371 F. App'x 917, 921 (10th Cir. 2010)).  However, an ALJ is obligated to consider all of the medically determinable impairments, including those that are nonsevere, in assessing a claimant's RFC.  *See* 20 C.F.R. § 1545(a)(2).  An ALJ's duty at step four consists of making specific RFC findings based on all of the relevant evidence in the case record.  *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  Those findings must be supported by substantial evidence.  *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

The Court finds that the ALJ satisfied his step four obligation to consider the effect of Plaintiff's mental disorders on her functional capacity.   Furthermore, the ALJ supported his decision with substantial evidence by thoroughly discussing all the relevant evidence, including opinion evidence, medical records, and Plaintiff's testimony.

First, the ALJ acknowledged Plaintiff's testimony at the hearing that she suffered from "depression with emotional instability, excessive fatigue, irritability, less interest in doing activities, feelings of guilty or worthlessness, and crying spells occurring 2-3 times

a month . . . cognitive issues with difficulty articulating her thoughts, [and] extreme short term memory loss at times." (AR at 22.)  However, the ALJ found that Plaintiff lacked credibility as her statements "concerning the intensity, persistence and limiting effects of symptoms [were] not fully persuasive."[2] (AR at 23.)

The ALJ also reviewed the objective medical record in arriving at an RFC assessment devoid of mental limitations.  At a physical examination on August 29, 2007, Dr. Celina F. Togle, M.D., assessed Plaintiff with post-concussion syndrome; however, she found that Plaintiff had an appropriate affect, normal speech, normal thought content, and normal cognitive functioning.  Dr. Tolge also indicated that a traumatic brain injury seemed unlikely and that she suspected that the "self reported cognitive disturbances related to [Plaintiff's] chronic pain condition." (AR at 441-42.) Dr. Tolge referred Plaintiff to Dr. Gregory A. Thwaites, PhD, who evaluated Plaintiff on September 11, 2007.  (AR at 457-463.)  In his evaluation, Dr. Thwaites noted some cognitive impairments in the visuospatial and visuoconstructional arenas, difficulties with processing speed, fine motor speed and dexterity, auditory processing, reasoning and problem-solving.  (AR at 462.)  However, he offered no opinion as to any restrictions these deficits would impose on her ability to work.  Like Dr. Tolge, Dr. Thwaites also indicated that non-neurological factors might be contributing to Plaintiff's cognitive difficulties, and that she would have the biggest improvement with pain, sleep, and

---

[2]  As discussed later in this Order, the Court finds that the ALJ did not commit error in assessing Plaintiff's credibility.

mood management.  (AR at 462-63.)  A CT scan of the head and brain in April 2005

and an MRI of the brain in August 2007 disclosed no evidence of intracranial disease.

(AR at 388, 448.)  On October 5, 2007, Dr. Tolge prescribed Cymbalta to treat Plaintiff's

mood.  (AR at 492.)  Later that month, Dr. Tolge noted that Plaintiff was tolerating the

drug (AR at 489), and in November, 2007, Dr. Tolge recorded that Plaintiff's depressive

disorder was "improving with Cymbalta."  (AR at 477); *see Kelley v. Chater*, 62 F.3d

336, 337-38 (10th Cir. 1995) (affirming ALJ's determination that claimant could perform

work based in part on the fact that impairment was well-controlled by medication).

 The ALJ also considered medical opinions, including a Mental Status Exam

administered by Dr. Beckie M. Grgich, Psy. D.  (AR at 350-354.)  Dr. Grgich found that

Plaintiff was not exhibiting evidence of a thought disorder, had never required inpatient

care for a psychiatric illness or required outpatient mental health services, and that she

was functioning within the average intellectual level.  (Ar at 352-53.)  Plaintiff was able

to recall her age, birth date, past and present presidents, and all of the items presented

to her earlier in the examination.  Plaintiff could count backwards from 20, do serial

3 subtraction, complete serial 7s with moderate difficult, and her ability to answer

complex mathematical questions was good and her judgment was intact.  (AR at 353.)

Dr. Grgich found no impairments in Plaintiff's ability to understand and carry out simple

instructions, or to understand and carry out complex instructions in a normal work

setting.  (AR at 354.)  Overall, Dr. Grgich opined that Plaintiffs's "mental health status

appears to be at least fair and likely, good."   However, she noted that Plaintiff's "ability

to interact appropriately with supervisors, co-workers and the public may be limited due to moodiness and physical pain."  (AR at 354.)  Dr. Grgich diagnosed mood NOS with a global assessment of functioning ("GAF") of 68, which is indicative of only mild symptoms.  (AR at 354.)

The ALJ also considered an opinion by Donald Glasco, M.D., who concluded that Plaintiff did not have any severe mental impairments.  (AR at 237.)  Dr. Glasco found that Plaintiff had no restrictions on activities of daily living, no difficulties in maintaining concentration, persistence, or pace, no episodes of decompensation, and only mild difficulties in maintaining social functioning.  (AR at 247.)

Given the ample evidence that Plaintiff's mental health disorder would have no more than a mild effect on her ability to work, and the ALJ's thorough consideration of that evidence, the Court finds that the ALJ's decision not to include mental health limitations in his RFC assessment was supported by substantial evidence.

**B.   WHETHER THE ALJ ERRED IN HIS ASSESSMENT OF MEDICAL OPINIONS**

Plaintiff raises challenges to the ALJ's assessment to three medical opinions. With respect to Dr. Sepeideh Nouhi's June 2, 2007 opinion (AR 363-67), Plaintiff contends that the ALJ engaged in improper "picking and choosing" in evaluating the opinion.  With respect to Dr. Tolge's February 9, 2009 opinion (AR at 542-49), Plaintiff argues that the ALJ's stated reasons for not placing "any significant weight" on the opinion were not supported by the evidence in the case record.  Lastly, Plaintiff argues

that the ALJ erred by not weighing Dr. Thwaites' September 11, 2007 report.  (AR at

457-463.)  The Court considers these challenges in turn.

       1.   Dr. Nouhi's June 2, 2007 Opinion

The ALJ assigned "the greatest weight" to Dr. Nouhi's opinion because it was

well-supported and not inconsistent with findings on examination by treating and

examining sources.  (AR at 29.)  Dr. Nouhi opined that Plaintiff:

> would have difficulty with any prolonged standing or moving about . . . .
> She should be able to sit for a routine 8-hour day given regular breaks or
> postural changes.  She would have difficulty with any repetitive use of her
> left hand for pushing, pulling, reaching, fingering, handling, sorting, or
> grasping.  She should avoid any lifting or carrying of greater than 10
> pounds.  She should avoid any overhead work or repetitive bending, or
> stooping.  **Any activities that requires repetitive rotation of her neck
> should be avoided** . . . .

(AR at 367) (emphasis added.)  Despite assigning Dr. Nouhi's opinion "the greatest

weight," the ALJ did not include in any limitation his RFC assessment that would have

accounted for Dr. Nouhi's statement that Plaintiff's should avoid activities requiring

repetitive neck rotation.  Although the ALJ was not required to include a limitation for

Plaintiff's neck rotation, he was required to explain why he chose not to include such

a limitation.  *See* SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts

with an opinion from a medical source, the adjudicator must explain why the opinion

was not adopted.").  As the Commissioner acknowledges, the ALJ failed to explain why

this portion of the opinion was not adopted.  The issue, thus, is not whether the ALJ

erred but whether that error was harmless.  After oral argument was held, the Court

directed the parties to submit supplemental briefing on whether this error was prejudicial to Plaintiff.

In his supplemental brief, the Commissioner raises two arguments in support of his contention that the ALJ's error was harmless.  First, the Commissioner asserts that the medical evidence did not support a finding that Plaintiff was restricted from repetitive neck rotation.  The Court will not entertain this argument.  Engaging in this type of post hoc analysis would amount to a usurpation of the "agency's function of weighing and balancing the evidence in the first instance."  *Carpenter*, 537 F.3d at 1267; *see also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").  Thus, it is not proper for the Court to attempt to weigh the medical evidence itself.

The Commissioner also points out that there is nothing in the Dictionary of Occupational Titles ("DOT")[3] descriptions of the two jobs identified by the VE, order clerk (DOT # 209.567-014) and final assembler (DOT # 713.687-018), suggesting that a worker would need to repetitively rotate the neck in order to perform those jobs.  However, there is nothing in the DOT descriptions that necessarily suggests a worker would **not** need to repetitively rotate her neck.  Although it is certainly conceivable that neck rotation is not needed to perform the work of an order clerk or a final assembler, this is a question that is more properly answered by a vocational expert.  Thus, the

---

[3]  U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed.1991).

ALJ's error is prejudicial as it is conceivable that Plaintiff would not be able to perform the jobs identified by the VE had the hypothetical question the ALJ posed to the VE included a restriction precluding Plaintiff from repetitively rotating her neck.  Remand is therefore necessary to allow the ALJ opportunity to determine whether such a limitation should be included in his RFC assessment, and if so, whether Plaintiff would still able to perform the jobs identified by the VE.[4]

Plaintiff also alleges that the ALJ ignored Dr. Nouhi's opinion that Plaintiff would have difficulty with any prolonged standing or moving about.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) ("The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability.").  The Court finds that the ALJ did not commit error with regard to Dr. Nouhi's standing limitation.  Dr. Nouhi did not specify how many hours per day Plaintiff would be able to stand, only that she would struggle with "prolonged standing or moving about."  (AR at 367.)  This is not inconsistent with the ALJ's RFC assessment that Plaintiff could stand/walk for 6 hours per day because the ALJ also included a sit/stand option.  (AR 20-21.)  Thus, Plaintiff would not have to endure prolonged standing because she would have the option to sit to relieve pain.

Plaintiff next argues that the ALJ erred in his assessment of the portions of Dr. Nouhi's opinion concerning her use of her left hand.  Although the ALJ generally gave great weight to Dr. Nouhi's opinion, he stated that the opinion "is not persuasive as

---

[4] Plaintiff has raised numerous other challenges to the ALJ's decision.  In the interest of providing sufficient guidance to the Commissioner on remand, the Court will address the remaining objections.

to limitations in overhead reaching or repetitive use of the left hand for pushing, pulling, reaching, fingering, handling, sorting, or grasping," as those aspects of his opinion appeared inconsistent with the examination records and medical records from Dr. Tolge and Dr. Scott Johnson.  (AR at 29.)  The ALJ noted that Dr. Nouhi's exam revealed "near normal (4+/5) strength in the left hand with no muscle atrophy or muscle wasting and near full shoulder range of motion."  (AR at 29.)  The ALJ also noted that "[m]edical records from Drs. Tolge and Johnson indicated normal muscle strength and tone in the upper extremities with normal grip strength and good range of motion."  (AR at 29.)  For example, a May 24, 2008 treatment note by Dr. Johnson stated that Plaintiff's "grip strength is full bilaterally."  (AR at 539.)

Plaintiff contends that Dr. Nouhi's limitations concerning her use of her left hand were supported by objective medical evidence and the ALJ's dismissal of that aspect of his report was, thus, improper.  However, the objective evidence Plaintiff points to does not seem to support any limitation with regard to Plaintiff's ability to use her left hand. (AR at 272-73, 275, 423).  The Court finds that the ALJ weighed Dr. Nouhi's report using the appropriate factors and adequately explained why he did not accord the portion of the report concerning Plaintiff's left hand limitations any significant weight.

2.   Dr. Tolge's February 9, 2009 Opinion

 On February 9, 2009, Dr. Tolge completed a Fibromyalgia Residual Functional Capacity Questionnaire.  (AR at 542-49.)  In "check-the-box" form, Dr. Tolge opined that Plaintiff could sit for one hour at a time, stand for one hour at a time, sit for about four total hours in an eight-hour work day, stand/walk about two hours in a workday, walk

around every thirty minutes for eight minutes at a time, shift positions at will, use an

assistive device when engaging in standing/walking, and take up to five unscheduled

breaks a day, lasting fifteen minutes each.  Dr. Tolge also opined that Plaintiff could

rarely lift/carry twenty pounds, occasionally lift/carry ten pounds, and frequently lift/carry

less than ten pounds.  Plaintiff could never twist or climb stairs, and only rarely

stoop/bend, crouch, or climb stairs.  Plaintiff would likely be absent more than four days

per month due to her impairments.  (AR at 545-48.)

A treating physician's opinion must first be evaluated to determine if it is entitled

to "controlling weight."  20 C.F.R. § 404.1527(d)(2); *Watkins v. Barnhart*, 350 F.3d 1297,

1300 (10th Cir. 2003).  The analysis is sequential.  An ALJ must first consider whether

the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques."  20 C.F.R. § 404.1527(d)(2).  If the answer to this question is "no," then the

inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he

must then confirm that the opinion is "not inconsistent with other substantial evidence in

[the] case record."  *Id.*  In other words, if the opinion is deficient in either of these

respects, then it is not entitled to controlling weight.  *Watkins*, 350 F. 3d at 1300.  Even

if not entitled to controlling weight, the treating physician's opinion is still entitled to

deference and must be weighed using the § 404.1527(d) factors.[5]  *Langley v. Barnhart*,

373 F.3d 1116, 1119 (10th Cir. 2004).

The ALJ acknowledged that Dr. Tolge had treated Plaintiff since 2007, but stated

that the opinion was "not given controlling weight or any significant weight."  (AR at 28.)

The ALJ noted that these restrictions were based, in large part, on Plaintiff's subjective

complaints and were not supported by the medical evidence, which showed normal or

near normal strength with full grip strength bilaterally, normal gait, and no neurological

deficits.  The ALJ also stated that Dr. Tolge's opinion was inconsistent with her own

treatment records and other medical opinions in the record.  Plaintiff concedes that the

ALJ adhered to the proper legal standard, but argues that the ALJ's stated reasons for

the assigning of weight were not supported by the evidence.

As explanation for his discounting of Dr. Tolge's opinion, the ALJ first noted that it

was based, in large part, on Plaintiff's subjective complaints, which were found not to be

fully persuasive or supported by the medical record.  Plaintiff asserts that the record

contains objective findings of degenerative disc disease, including MRI evidence of a

disc protrusion at L5-S1 and a discogram positive for central annular tear at the L5-S1

level, as well as physical exam findings of reduced spinal motion, paraspinal muscle

tenderness and muscle spasm.  (Doc. # 13 at 11.)  Thus, Plaintiff argues that the record

_____

[5]  Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

contains objective evidence supporting her complaints.  However, none of these objective findings shed any light on Plaintiffs functional abilities or otherwise support the extreme limitations expressed in Dr. Tolge's opinion.  For example, the Court notes that at the time the MRI was assessed, Plaintiff was "still actively working."  (AR at 273.)

Plaintiff also contends that the ALJ erred in discounting Dr. Tolge's opinion because it was based on subjective complaints.  However, a physician's reliance on a claimant's subjective reports, which the ALJ separately determined not to be credible, is a legitimate reason for discounting the weight given to a medical opinion.  *Sitsler v. Astrue*, 410 F. App'x 112, 119 (10th Cir. 2011); *see also Oldham v. Astrue*, 509 F.3d 1254, 1259 (10th Cir. 2007) (affirming decision where ALJ had discounted medical opinion based on claimant's unreliable statements made to doctors).  As Plaintiff notes, fibromyalgia is a unique disease that is necessarily "diagnosed entirely on the basis of patients' reports and other symptoms."  *Sanchez v. Astrue*, No. 08-cv-00560, 2009 WL 4810696, at *3 (D. Colo. Dec. 10, 2009); *see also Gilbert v. Astrue*, 231 F. App'x 778, 783 (10th Cir. 2007) (stating that the "cause or causes [of fibromyalgia] are unknown, there is no cure, and . . . its symptoms are entirely subjective.").  Nonetheless, the Court finds that the ALJ did not improperly discount Dr. Tolge's opinion because Dr. Tolge's assessment of Plaintiff's functional capacity was based on the presence of multiple impairments, and there is no indication that any of the extreme restrictions resulted from Plaintiff's fibromyalgia.  Thus, it was not error for the ALJ to discount Dr. Tolge's opinion for relying on subjective complaints.

Lastly, Plaintiff contends that the ALJ erred by findng that Dr. Tolge's opinion was inconsistent with the opinions of Dr. Nouhi and Dr. Grgich.  Dr. Nouhi opined that Plaintiff would have difficulty with prolonged standing or moving about, but that "[s]he should be able to sit for a routine 8-hour day given regular breaks or postural changes." (AR at 367.)  Dr. Nouhi did not opine that Plaintiff would need up to five unscheduled breaks per day or would likely be absent more than four times per month.  Plaintiff acknowledges some inconsistency between the opinions of Dr. Nouhi and Dr. Tolge, but argues that any differences "should have been heavily weighed and fully discussed . . . [g]iven the longstanding relationship between Dr. Tolge and [Plaintiff]."  (Doc. # 13 at 13.)   However, the ALJ fully discussed his reasons for his assignation of weight to the opinions of Dr. Nouhi and Dr. Tolge in accordance with 20 C.F.R. § 404.1527 and Plaintiff's arguments essentially ask this Court to reweigh the evidence, which this Court is not empowered to do.  *See Oldham*, 509 F.3d at 1257-58.

The Court agrees that Dr. Grgich's opinion is not inconsistent with Dr. Tolge's, as the ALJ stated, because Dr. Grgich conducted a psychological evaluation and did not offer an opinion regarding Plaintiff's physical limitations.  (AR at 350-54.)  The Court believes that this error would likely be harmless as the ALJ's discussion provides substantial (and legitimate) explanation for discounting Dr. Tolge's opinion, and the statement that Dr. Tolge's opinion was inconsistent with Dr. Grgich's does not seem to play a prominent role in his analysis.  However, because the Court finds that remand is appropriate to assess whether the RFC should have included a limitation for her neck rotation problem, this error should also be corrected on remand.

3.     Dr. Thwaites' Neuropsychological Report

Plaintiff argues that the ALJ failed to evaluate Dr. Thwaites' opinion and explain what weight he assigned to it.  (Doc. # 15 at 15-16.)  A medical opinion is a statement from an acceptable medical source "that reflect judgments about the nature and severity of [a claimant's] impairment(s), including your symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); *Zumwalt v. Astrue*, 220 F. App'x 770, 780 (10th Cir. 2007).  This report does not appear to qualify as a medical opinion because Dr. Thwaites noted only that Plaintiff was displaying various impair-ments without offering his opinion about the nature or severity of those impairments.   Moreover, the ALJ's failure to assign it weight would be harmless error even if this report qualified as a medical opinion.  Although Dr. Thwaites noted these various impairments existed, he did not opine as to how they would affect Plaintiff's ability to work.  Thus, even if the ALJ had placed great weight on this opinion, there is nothing in Dr. Thwaites' report that appears inconsistent with the ALJ's ultimate RFC finding.

**C.     WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY**

The ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to produce the types of alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of symptoms are not fully persuasive."  (AR at 23.)

"[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  *White v. Barnhart*, 287 F.3d

17

903, 909 (10th Cir. 2001) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).  Provided the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference.  *Id.* at 910; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (ALJ's decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record").  The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must set forth only the specific evidence he relied upon in evaluating Plaintiff's testimony.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on a reviewing court.

The Court finds that the ALJ satisfied his obligation to provide specific and legitimate reasons in support of his credibility determination.  The ALJ noted that at the time she applied for disability, Plaintiff indicated that she and her family were eating out at the local casino most of the time.  (AR at 200.)  She testified at the hearing that she drove 100 miles every three months for appointments with Dr. Tolge, and spent a week in Cancun, Mexico on vacation in June of 2008.  (AR at 53, 67.)  The ALJ found that these activities were inconsistent with Plaintiff's complaints and the alleged severity of her pain, fatigue, and cognitive deficits.  (AR at 23.)

Equally important to his credibility determination, the ALJ noted that the observations by treating and examining sources and the generally benign clinical and laboratory findings were inconsistent with Plaintiff's complaints.  (AR at 24.)  Plaintiff contends that "the ALJ did not identify any observations by treating and examining

18

medical sources, nor did he cite to specific clinical findings . . .." (Doc. # 13 at 19.) Although the ALJ did not identify specific evidence in the paragraph of his decision explaining his credibility determination, the decision is replete with references to inconsistencies between Plaintiff's testimony and the observations of medical professionals.  For example, the ALJ noted that Plaintiff described a 9/10 pain level during Dr. Nouhi's examination, yet she was not observed to be in acute distress, nor did she require postural changes for comfort.  (AR at 25, 365.)  During a physical examination on June 4, 2007, Plaintiff described weakness in her right arm, not her left arm.  (AR at 25, 393.)  The ALJ also noted that Plaintiff reported in March 2008 that she was very busy caring for her ill father and was involved with her children's activities. She also reported that she slept from 10pm to 6am, and though she experienced some daytime fatigue, she did not report any need to lie down during the day.  (AR at 26, 523.)  The ALJ reasonably found that these treatment notes suggested a greater level of activities than the claimant described at the hearing.  (AR at 26.)  Thus, the ALJ supported his credibility determination by setting forth the specific evidence that he relied upon.

**D.    WHETHER THE COURT SHOULD AWARD ATTORNEYS' FEES**

In her supplemental brief, Plaintiff requests an award of attorneys' fees under the Equal Access to Justice Act ("EAJA"), 24 U.S.C. § 2412(d) on the grounds that the Commissioner's action in this case was not substantially justified.  (Doc. # 24 at 6-7.) Under 28 U.S.C. § 2412(d)(1)(B), Plaintiff must move for attorneys' fees by motion within thirty days of final judgment.  Plaintiff's request in the supplemental brief does not

comply with the requirements of § 2412(d)(1)(B) as the fee application is required to include an itemized statement from the attorney stating the time expended and the hourly rate.  Thus, the Court will not consider the offhand request for EAJA attorneys' fees as an actual motion for attorneys' fees.

The Court observes, however, that the EAJA only allows for attorneys' fees when the position of the United States was not "substantially justified" and there are no special circumstances that make an award of fees unjust.  28 U.S.C. § 2412(d)(1)(A); *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002).  The term "substantially justified" means that the government's position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988) (noting that the government's "position can be justified even though it is not correct").  Although the Court cannot be certain that the ALJ's failure to include a repetitive neck rotation limitation was not prejudicial to Plaintiff, there is a strong possibility that the error was, in fact, harmless.  Further, Plaintiff raised myriad challenges to the ALJ's decision, the vast majority of which the Court finds not reversible error.  Thus, although the Court will reserve ruling on the request for attorneys' fees pending a properly filed motion, the Court is inclined to find that the Commissioner's position was substantially justified.

## IV.  **CONCLUSION**

Accordingly, it is ORDERED that the Commissioner's decision is REVERSED and REMANDED to the Commissioner for proceedings consistent with this Order.

It is FURTHER ORDERED that Plaintiff is AWARDED her costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1 and 28 U.S.C. § 2412(a)(1).

DATED:  August  02 , 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge